| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | **NOT FOR PUBLICATION** |
| In re | : | Chapter 7 |
| Daniel Gordon, | : | Case No. 09-16230 (AJG) |
| Debtor. | : | |

**OPINION REGARDING DEBTOR'S OBJECTION
TO CLAIM OF INTERNAL REVENUE SERVICE**

**A P P E A R A N C E S:**

TODTMAN, NACHAMIE, SPIZZ & JOHNS, P.C.
Special Counsel to Daniel Gordon
425 Park Avenue
New York, NY 10022

        By:    Barton Nachamie, Esq.
                  Arthur Goldstein, Esq.
                  Jill Makower, Esq.

PREET BHARARA
United States Attorney for the Southern District of New York
Counsel for the Internal Revenue Service
86 Chambers Street, 3rd Floor
New York, NY 10007

        By:    Joseph A. Pantoja, Esq.

Law Offices of Angela Tese-Milner, Esq.
Chapter 7 Trustee
One Minetta Lane
New York, NY 10012
        By:    Angela G. Tese-Milner, Esq.

        Before this Court is the objection (the "Objection") of Daniel Gordon, the Chapter

7 debtor ("Daniel Gordon" or the "Debtor"), dated October 21, 2010, to the claim of the

Internal Revenue Service (the "IRS") pursuant to 11 U.S.C. § 502(b)(1).[1]  For the reasons listed below, the Court abstains from hearing this dispute pursuant to 28 U.S.C. § 1334 and 11 U.S.C § 505.

## Jurisdiction and Venue

The Court has jurisdiction to consider the Objection pursuant to 28 U.S.C. §§157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## Background and Procedural History

On or about December 19, 2003, Daniel Gordon entered into a cooperation agreement (the "Cooperation Agreement") with the United States Attorney for the Southern District of New York and pled guilty to charges of money laundering, wire fraud in connection with a scheme to defraud Merrill Lynch, and conspiracy to falsify books and records.[2]  *See* Plea Allocution Transcript, Pantoja Decl. Ex 1; *Gordon v. United States of America,* 2009 WL 4756503, at *2 (S.D.N.Y. 2009).  In connection with the Cooperation Agreement, Daniel Gordon agreed to file amended personal tax returns for 2000 and 2001.  *Id.,* at *1.

On or about May 1, 2007, the IRS mailed Daniel Gordon three notices of deficiency for the tax years 2000, 2001, and 2002 (the "Notices").  *See* Objection Ex. 2, 3, and 4, respectively.  The Notices arise from additional income from embezzlement, underpayment of self-employment taxes, the disallowance of certain deductions claims

---

[1] References to section numbers hereafter will be to Title 11 of the United States Code, unless otherwise specified.
[2] Daniel Gordon falsely reported that he had an offshore fund willing to enter into a transaction with Merrill Lynch and, upon Merrill Lynch's transfer of approximately $43 Million to an off-shore account to effectuate the transaction, Daniel Gordon wired the money to other accounts he controlled.  Prior to the transfer, he falsified books and records to make the energy trading division of Merrill Lynch that he managed appear more profitable to potential purchasers.  *Gordon v. United States of America,* 2009 WL 4756503, at *1 (S.D.N.Y. 2009).

by Daniel Gordon, and related penalties.  Specifically, the 2000 tax liability was adjusted to account for income from embezzlement, additional income reported on the amended return, underpayment of self-employment taxes, the disallowance of certain deductions, and related penalties.  *See* Obj. at Ex. 2.  The 2001 tax liability was adjusted to reflect additional income reported on the amended return as well as related penalties.  *See* Obj. at Ex. 4.  The 2002 tax liability was adjusted to account for his failure to report lease-termination income, underpayment of self-employment taxes in that year, the disallowance of certain deductions, and related penalties.  *See* Obj. at Ex. 3.

In response, on July 24, 2007, Daniel Gordon filed a petition with the United States Tax Court for a redetermination of the deficiencies in 2000 and 2002.  On or about the same date, Daniel Gordon and Laura Gordon filed a petition (with the 2000 and 2002 petitions, the "Petitions") for a redetermination of the deficiencies for the year 2001.[3]  On September 20, 2007, the IRS filed answers to the Petitions.  The tax court proceeding (the "Tax Court Proceeding") was scheduled to commence October 19, 2009.

On October 19, 2009 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of title 11 of the United States Code (the "Bankruptcy Code").

On December 7, 2009, the IRS filed a proof of claim (the "Claim"), asserting a secured claim in the amount of $54,590.37 for the 2000 tax year, and a general unsecured claim in the amount of $44,277,926.34 for the remainder of the tax allegedly due from 2000-2001 as well as pre-petition interest and a pre-petition penalty.  The secured portion of the Claim is secured by a right to setoff.  *See* Claim 1.

---

[3] Laura and Daniel Gordon filed separate tax returns in 2000 and 2002.  They filed a joint return in 2001.  *See* Obj. Ex. 2-4, respectively.

3

On October 22, 2010, the Debtor filed the Objection.[4] In the Objection, the Debtor disputes that he owes any tax debts and additionally disputes that he owes any tax debts that are non-dischargeable. Further, the Debtor argues the Claim violates the Cooperation Agreement, in which the Debtor asserts the IRS waived the right to tax or civil fraud penalties.

The IRS filed a response (the "Response") on May 9, 2011 in which the IRS requests the Court deny the Objection because "its wholly conclusory and otherwise unsubstantiated allegations are insufficient to rebut the *prima facie* validity of the IRS Claim." Response ¶ 35. In the alternative, the IRS requests the Court abstain from determining the Debtor's tax liabilities and refer the matter to the Tax Court pursuant to either 28 U.S.C. § 1334(c) or, in the alternative, 11 U.S.C. § 505(a).

On June 21, 2011, the Trustee submitted a statement in support of the prompt determination of the Debtor's tax liability in either court.

On July 29, 2011, the Debtor filed a reply (the "Reply") to the Response wherein the Debtor argues it is imperative for the Court to exercise its authority to adjudicate the Claim because resolution of the Claim will have a decisive effect on the estate. The Debtor further contends the Court should hear the Claim since (i) the issues involved are not complex, and (ii) the Claim would take over two years to adjudicate in Tax Court.

## Discussion

**Objection is Substantiated**

The IRS argues that the Objection contains allegations insufficient to rebut the *prima facie* validity of the Claim. The IRS bases this statement on the fact that the body

---

[4] The Debtor argues that since he has a pecuniary interest in the outcome of the litigation, he is a "party in interest" and therefore has standing to object to the Claim under § 502(a) of the Bankruptcy Code. Neither the Chapter 7 trustee (the "Trustee") nor the IRS challenged the Debtor's standing to object to the Claim.

4

of the Objection contains such conclusory statements as "the IRS erred" rather than providing an explanation of how the IRS erred.  *See* Response ¶ 17.

A proof of claim, which is entitled to *prima facie* validity, *see* Fed. R. Bankr. P. 3001(f), may be rebutted by an objecting party.  *See In re Kahn*, 114 B.R. 40, 44 (Bankr. S.D.N.Y. 1990) ("If the objecting party rebuts the claimant's *prima facie* case, it is for the claimant to prove his claim, not for the objector to disprove it.") (internal quotations and citations omitted).  The Debtor cannot "rebut the *prima facie* case merely by stating that the amount of taxes claimed by the [IRS] is not correct; the Debtor must produce some evidence to support that statement." *In re Forte*, 234 B.R. 607 (Bankr. E.D.N.Y. 1999) (internal quotations and citations omitted).

The Debtor responds by pointing out that the exhibits to the Objection present evidence sufficient to rebut the *prima facie* validity of the Claim.  *See* Reply ¶ 52.  The Petition requesting a redetermination of the 2000 and 2002 Notices is attached as Exhibit 5, and the Petition objecting to the 2001 Notice is attached as Exhibit 6.  A document attached as an exhibit or incorporated by reference may be properly considered by the Court.  Fed. R. Civ. P. 10(c).  "The pleading is deemed to include any document attached to it as an exhibit or any document incorporated in it by reference." *Goldman v. Belden,* 754 F.2d 1059, 1065 (2d Cir. 1985) (citations omitted).  Here, the Petitions are not only attached as exhibits, but they are also incorporated by reference in the body of the Objection.  *See* Objection ¶¶ 27, 31, 33.  The Petitions identify the alleged errors with the Claim and also set forth with specificity the evidentiary facts sufficient to rebut the *prima facie* validity of the Claim.  Having found the Debtor raised sufficient issues to properly challenge the Claim in the first instance, the Court will now consider whether abstention

from adjudication of the Claim is proper pursuant to 28 U.S.C. § 1334 or 11 U.S.C. § 505.

**Abstention under 28 U.S.C. § 1334(c)**

28 U.S.C. § 157(b)(2)(B) confers on the Court "jurisdiction over allowance or disallowance of claims against the estate." When the IRS filed a proof of claim requesting Court approval of the validity and amount of the claim asserted, the IRS called for a determination by the Court as to the appropriate amount of that claim. *In re Manville Forest Prods. Corp.*, 896 F.2d 1384, 1390 (2d Cir. 1990) ("The determination of the objection to and allowance of [the applicant's] claim is clearly within the traditional core jurisdiction of the bankruptcy court."). *See also In re S.G. Phillips Constructors, Inc.*, 45 F.3d 703, 804 (2d Cir. 1995).

However, 28 U.S.C. § 1334(c)(1) provides that a court may, "in the interest of comity or judicial economy," abstain from hearing a particular proceeding "arising under" a case under title 11. This section "codifies the permissive abstention doctrine and demonstrates the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case." *In re Cody, Inc.*, 281 B.R. 182, 190 (Bankr. S.D.N.Y. 2002) *aff'd in relevant part at* 338 F.3d 89 (2d Cir. 2003) (internal quotations and citations omitted). "This statute has been widely applied by bankruptcy courts to abstain from hearing tax disputes between debtors and state and/or federal taxing authorities." *Id.* at 182.

The pertinent factors that bankruptcy courts consider when deciding whether to exercise their discretion to permissively abstain from hearing a controversy are: (1) the

effect of abstention, or lack thereof, on efficient administration of estate; (2) the extent to which state law issues predominate; (3) the difficult or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or another non-bankruptcy forum; (5) whether there is basis for federal jurisdiction apart from debtor's bankruptcy filing; (6) the degree of relatedness or remoteness of proceeding to main bankruptcy case; (7) the substance, rather than form, of asserted "core" proceeding; (8) the feasibility of severing state law claims; (9) the burden of the court's docket; (10) the likelihood that commencement of proceeding in bankruptcy court involves forum-shopping; (11) the existence of a right to jury trial; and (12) the presence in proceeding of non-debtor parties. *In re New York City Off-Track Betting Corp.*, 434 B.R. 131, 147 (Bankr. S.D.N.Y. 2010) (citing *In re Ephedra Prods. Liab. Litig.*, 2010 WL 882988, at *2 n. 2 (S.D.N.Y. 2010) (quoting *N.Y. City Employees' Ret. Sys. v. Ebbers (In re WorldCom, Inc. Sec. Litig.)*, 293 B.R. 308 (Bankr. S.D.N.Y. 2003)); *In re Bozel S.A.,* 434 B.R. 86, 101-02 (Bankr. S.D.N.Y. 2010)). Bankruptcy courts consider one or more (although not necessarily all) of the above twelve factors. *In re Cody, Inc.*, 281 B.R. at 190.

A. *Effect of abstention, or lack thereof, on efficient administration of estate*

The Debtor contends adjudication of the Claim will have a determinative effect on the estate since the IRS holds the largest claim in the case, and therefore "resolution of the IRS Claim is of utmost significance to the Debtor's other creditors who may receive nothing if the IRS prevails on its Claim."[5] Reply ¶ 21. The Debtor argues that the

---

[5] The Debtor also argues the Claim will be decisive since whether the Debtor made a "false or fraudulent return with the intent to evade tax" or a "willful attempt in any manner to defeat or evade tax" will determine whether the IRS has a priority claim under § 507(a)(8)(A)(iii). *See* Reply ¶ 20. That section of the Bankruptcy Code provides that a tax not assessed before commencement of the case but assessable after commencement of the case other than, *inter alia*, taxes with respect to which the debtor made a fraudulent return or willfully attempted to evade or defeat the tax are entitled to priority treatment. 11 U.S.C. § 507(a)(8)(A)(iii); 4 Collier on Bankruptcy ¶ 507.11[2][c] (Alan N. Resnick & Henry J. Sommer eds., 16th

7

Claim, which should be quickly resolved to enable a distribution of assets, would take at least two years to determine in Tax Court.

With respect to the Debtor's argument that "the outcome of the Objection will be decisive for the Debtor's estate," *see* Reply ¶ 25, the Court agrees that the Claim would likely need to be adjudicated prior to distributing the estate's assets, unless § 523(a)(5) were decided in favor of Laura Gordon. Although abstention may be appropriate in "no asset" cases, this has the potential of providing a distribution and therefore may impact the recoveries by other creditors. The potential sources of income listed by the Debtor include the adversary proceeding against AllStar Capital, Inc. seeking avoidance and recovery of alleged fraudulent transfers, recovery of real property in Connecticut, a potential fraudulent transfer action against Laura Gordon that has not yet been brought, and a potential tax refund allegedly owed to the Debtor. *See* Reply at ¶ 9.

Nevertheless, resolution of the Objection is not necessarily determinative of whether there will be a distribution to unsecured creditors. If the Court found that Laura Gordon's $3,533,277.92 monetary judgment against the Debtor is entitled to priority

---

ed.). However, the IRS does not raise the issue in either their proof of claim, which simply asserts a partially secured and partially unsecured claim, or in their papers. Although the Debtor refers to the IRS proof of claim notation that the $31 million claimed by the IRS for income tax and pre-petition interest is "Pending Examination," that denotation does not necessarily lead to the Debtor's conclusion that those fees are "not yet assessed." Further, as a practical matter, if the Claim were not entitled to priority under § 507(a)(8), and assuming *arguendo* that Laura Gordon were not entitled to priority under § 523(a)(5), there would be approximately $48 million of unsecured claims by the IRS and Laura Gordon alone. Although the Debtor listed $1,792,468 as due to Signature Bank, the underlying obligation has been settled as between Signature Bank and AllStar. The remaining known claims other than those of Laura Gordon and the taxing authorities amount to approximately $125,000. Thus, only .26% of whatever funds are available would be distributed to the remaining unsecured creditors. Even if the IRS were owed nothing, Laura Gordon's unsecured claim of $4 million would ensure she receives 97% of whatever is available for the unsecured creditors, leaving only 3% for the remainder of the unsecured creditor base. Thus, adjudicating the priority or non-priority of the Claim may ultimately have less of an impact on other creditors than the Debtor asserts.

under § 507(a)(1),[6] based upon the potential recovery estimate, there would not be enough money to pay Laura Gordon in full and distribute funds to the remainder of the estate. Since that dispute is not currently before the Court, and because is uncertain whether there will be enough money to pay administrative fees or priority claims, resolution of the Claim is important to the efficient administration of the estate. However, although the Claim needs to be adjudicated, it does not necessarily need to be adjudicated in this Court.

Regarding the Debtor's argument that abstention would be inefficient for administration of the estate because it would take at least two years for the Tax Court to adjudicate the Petitions, it is not clear to the Court that the time estimate is accurate. Further, even if it were accurate and the Bankruptcy Court could render a decision more quickly than the Tax Court could, overall there would likely be no appreciable difference in the amount of time it would take each court to hold a hearing and render a decision. The potential difference in time would not dramatically impact administration of the estate.

In addition, expedition was not a focus of either the Debtor or the Trustee since neither raised an objection to the Claim until almost a year after the Claim was filed. The Claim was continuously adjourned on consent until nearly two years after it was filed. During that time, the Debtor never sought expedited resolution of the dispute, nor did the

---

[6] Laura Gordon obtained a monetary judgment in the New York Supreme Court against Daniel Gordon in the amount of $3,553,277.92 (Adv. Proc. No. 09-1729, Complaint at Ex. F) for amounts outstanding under a line of credit (the "Line of Credit") that Daniel Gordon increased in contravention of their separation agreement ("the Separation Agreement") (Separation Agmt., Article IV). Laura Gordon additionally requested $34,131.90 in monthly maintenance and child support as well as over $150,000 in attorneys' fees (Adv. Proc. No. 09-1729, Complaint ¶ 29). On May 5, 2011, this Court entered an order declaring the debt to be non-dischargeable. Since both parties agreed that the Line of Credit debt would be non-dischargeable under § 523(a)(15) as a debt to a former spouse incurred in connection with a separation agreement, the Court dismissed the adversary proceeding but did not decide whether the debt was non-dischargeable pursuant to § 523(a)(5) and thus entitled to priority under § 507(a)(1).

9

Trustee intervene to seek such consideration. Moreover, if there were a need to immediately administer the estate for the benefit of the unsecured creditors, the Debtor and the Trustee could have requested an adjudication of Laura Gordon's Line of Credit claim in the form of a claim objection as discussed at the April 28, 2011 hearing. Rather, the Debtor objected to going forward with the § 523(a)(5) allegation and instead pursued settlement of that dispute by agreeing to adjournment of the priority issue. Counsel for the Trustee was also present at that hearing and did not make an effort to have that issue adjudicated. Disposition of that matter would have informed the Court as to whether deciding the tax controversy would have impacted the estate since if Laura Gordon's claim is non-dischargeable under § 523(a)(5), it would be entitled to priority under § 507(a)(1) and there would likely be no funds to distribute to unsecured creditors. Abstention will not result in inefficient administration of the estate under the circumstances presented.

This factor therefore weighs in favor of abstention.

*B. Difficult or Unsettled Nature of the Applicable Law*

Adjudication of the Claim would require consideration of several intricate areas of tax law including the law surrounding income from embezzlement, underpayment of self-employment taxes, failure to report lease-termination income, disallowance of certain deductions, and penalties. Resolution of such complex tax issues would require the Court to interpret decisions of the United States Tax Court, a procedure better left for that forum. *See In re Williams,* 209 B.R. 584 (Bankr. R.I. 1997) (abstaining under 28 U.S.C. § 1334(c)(1) where the litigation required the resolution of complex issues of tax law and thus would require the court to interpret decisions of the Tax Court). The Tax

Court is specialized for hearing this type of dispute, and thus is better suited to adjudicate the Claim. Without considering the impact of the policy considerations of § 505, the complexity of the tax issues weigh in favor of abstention. *See In re Cody,* 281 B.R. at 192 (upholding the bankruptcy court's decision to abstain pursuant to 28 U.S.C. § 1334 since, *inter alia,* the matter involved complex tax issues).

*C. Presence of a Related Proceeding Commenced in another Non-Bankruptcy Forum*

There is currently a proceeding pending in Tax Court that was scheduled to begin on the Petition Date. Since an alternate, more appropriate forum exists under the circumstances presented for adjudication of the Claim, this factor weighs in favor of abstention.

*D. The Presence in the Proceeding of Non-Debtor Parties*

Since adjudication of the Petitions would require consideration of Laura Gordon's request for innocent spouse relief, *see* 2001 Petition ¶ 5(u), consideration of the Claim would involve a non-debtor party who did not choose this forum. Accordingly, this factor also weighs in favor of abstention.

Based upon the Court's review of the foregoing relevant factors, the Court finds that these factors weigh in favor of this Court's exercising its discretion to abstain under 28 U.S.C. § 1334(c)(1).

**Abstention under 11 U.S.C. § 505(a)**

In the alternative, the IRS argues that the Court should abstain under 11 U.S.C. § 505(a)(1). 11 U.S.C. § 505(a)(1) provides, in relevant part, that the Court "may determine the amount or legality of any tax . . . ." As the verb "may" indicates, the Court's ability to determine a debtor's tax liability is discretionary. *In re New Haven*

11

*Projects Ltd. Liability Co.,* 225 F.3d 283, 287 (2d. Cir. 2000). *See In re Cody, Inc.*, 281 B.R. 182; *In re Galvano*, 116 B.R. 367 (Bankr. E.D.N.Y. 1990). In making that determination, courts weigh a number of factors, including: (1) the complexity of the tax issues to be decided; (2) the need to administer the bankruptcy case in an orderly and efficient manner; (3) the burden on the bankruptcy court's docket; (4) the length of time required for trial and decision; (5) the asset and liability structure of the debtor; and (6) the prejudice to the debtor relative to the prejudice to the taxing authority from inconsistent assessments. *Id.* at 372.

As discussed, *supra*, the complexity of the tax issues and the appropriateness of the Tax Court as a forum for a tax claim already pending weigh in favor of abstention. There is no significant difference in the length of time required for a trial and decision between the two courts, especially in light of the fact that the parties waited two years after filing to request expedited relief in the adjudication the Notices.

Further, the exercise of discretion should be informed by the purpose underlying the statute, "namely to protect the interests of both debtors and creditors . . . . Creditors are entitled to protection from the dissipation of an estate's assets in the event the debtor failed to contest the legality and amount of taxes assessed against it." *In re New Haven Projects Ltd. Liability Co.,* 225 F.3d at 288 (internal quotations and citations omitted). Where a bankruptcy court abstains under § 505, "it is generally when the litigation of a tax issue furthers no bankruptcy purpose . . . ." *In re G-I Holdings, Inc.,* 2003 WL 22273256, at *10 (D.N.J. 2003).

If the Court were to adjudicate the Objection, it would not advance the purpose underlying § 505(a). Congress's concern that a debtor might not contest a tax assessment

12

is not applicable where, as here, the Debtor has already commenced a Tax Court Proceeding to challenge that assessment. *See In re Galvano,* 116 B.R. at 372 ("In the present case, the Debtor's § 505 motion does not appear to comport with the policy of protecting creditors against the inaction of disinterested debtors. The Debtor is neither inactive nor disinterested and has few creditors other than the federal and state taxing authorities.").

Although there are many issues that would need to be resolved prior to determining what the likelihood of benefit to unsecured creditors is, those issues have never been given priority by the parties, including the Trustee and the Debtor. In fact, the Debtor repeatedly argued that it was unnecessary to adjudicate the § 523(a)(5) issue until the Claim was resolved, but took no action to expedite that adjudication. The difference in time it would take the two courts to hear the Claim, as previously discussed, does not warrant the adjudication of the Claim by this Court. Thus, the Court finds that abstention is also appropriate under 11 U.S.C. § 505(a).

**Conclusion**

For the reasons stated herein, the Court concludes that it will exercise its discretion to abstain from deciding the Objection under the permissive abstention doctrine of 28 U.S.C. § 1334(c)(1) as well as under 11 U.S.C. § 505(a). Therefore, the Objection is denied without prejudice for the parties to continue the Tax Court Proceedings.

The IRS should settle an order consistent with this opinion.

Dated: New York, New York
August 30, 2011

<u>**s/Arthur J. Gonzalez**</u>
ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE